## UNITED STATES DISTRICT COURT
## THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| **HILDA L. SOLIS**, Secretary of Labor, <br> United States Department of Labor, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| **SUSAN BLACKFORD**, and **JOEL** | : | |
| **BLACKFORD**, individually and as fiduciary to | : | |
| the **COPY CAT BUSINESS SYSTEMS, INC.** | : | Case No. 09-cv-2148 |
| **SEP/SAR PLAN; COPY CAT BUSINESS** | : | Judge Montgomery |
| **SYSTEMS, INC.** and **COPY CAT BUSINESS** | : | Magistrate Judge Mayeron |
| **SYSTEMS, INC. SEP/SAR PLAN** | : | |
| | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## THE SECRETARY OF LABOR'S MEMORANDUM OF LAW SUPPORTING HER MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local

Rules for Filing a Motion for Summary Judgment, the Secretary of Labor, U.S.

Department of Labor ("Secretary"), respectfully presents this memorandum of

points and authorities supporting her motion for partial summary judgment. As

there is no genuine dispute as to any material fact, the Secretary is entitled to

summary judgment against Defendants Susan Blackford and Joel Blackford

(collectively "Defendants") for their violations of the provisions of Title I of the

Employee Retirement Income Security Act ("ERISA" or the "Act"), 29 U.S.C. §

1001 et. seq., as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327

(1986).

## I. ISSUE PRESENTED

> Whether the Defendants' failure to ensure that employee
> plan contributions were remitted to the company's
> employee pension benefit plan violated ERISA
> §§ 403(a)(1) and (c)(1), 404(a)(1)(A), 406(a)(1)(A) and
> (D) and 406(b)(1) and (2).

## II. STATEMENT OF THE CASE

The Secretary alleges that the Defendants failed to ensure that employee plan

contributions were remitted to their company's employee pension plan, the Copy

Cat Business Systems, Inc. SEP/SAR Plan (the "Plan"), in violation of ERISA.

Through her action the Secretary seeks an order requiring the Defendants to correct

the prohibited transactions in which they engaged and to restore all losses to the

Plan caused by their fiduciary breaches, including lost opportunity costs; an order

enjoining the Defendants from violating ERISA and from serving as fiduciaries to

any ERISA-covered employee benefit plan; an order removing the Defendants from

any positions that they now have as fiduciaries to the Plan; an order appointing an

independent fiduciary to ensure the proper administration of the Plan; and an order

requiring the Defendants to pay the fees and costs of the independent fiduciary.

### III.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**A.     Defendants' relationship to Copy Cat Business Systems, Inc., the Plan Sponsor**

1.     Copy Cat Business Systems, Inc. ("Copy Cat"), a copying business, established the Plan on December 20, 1996, to provide retirement income to its employees.[1]

2.     At all relevant times, Joel Blackford ("J. Blackford") was the president and owned 39 percent of Copy Cat.[2]

3.     At all relevant times, Susan Blackford ("S. Blackford") was the vice-president and owned 51 percent of Copy Cat.[3]

**B.     Defendants' fiduciary roles and responsibilities to the Plan**

1.     At all relevant times, S. Blackford exercised authority and control over the management of the Plan and over the Plan's assets, had the responsibility to make administrative decisions on the Plan's behalf, and had the authority to direct the payment of withheld employee contributions to the Plan. [4]

2.     At all relevant times, S. Blackford was the administrator to the Plan,

---

[1] Summary Judgment Exhibit List ("Ex.") A, B at Request to Admit No. 7, E at Request to Admit No. 7

[2] Ex. B at Interrogatory Nos. 3, 6; Ex. C, ¶ 3.

[3] Ex. B at Interrogatory No. 6; Ex. D, ¶ 3.

[4] Ex. E at Request to Admit Nos. 6, 10, 11, 12, 15.

having been appointed to that position by J. Blackford.[5]

3.      At all relevant times, J. Blackford had the responsibility to make administrative decisions on the Plan's behalf and exercised this authority by appointing Susan Blackford to administer the Plan.[6]

4.      At all relevant times, withheld employees plan contributions were commingled with the general assets of Copy Cat, and Defendants had the power to, and did in fact write checks on Copy Cat's checking account to pay Copy Cat's business creditors.[7]

**C.   Defendants' remittance of employee withheld plan contributions**

1.      From January 1, 2003 to December 2006, Defendants failed to remit $9,970.10 in employee withheld plan contributions to the Plan.[8]

2.      As a result of Defendants' failure to remit withheld employee contributions, the Plan (and thereby the employee participants of the Plan) incurred a total loss of $13,218.76, including $3,448.66 in lost opportunity costs.[9]

---

[5] Ex. B at Request to Admit Nos. 10, 11.

[6] Ex. B at Request to Admit Nos. 10, 11, 15; Interrogatory Nos. 5, 8.

[7] Ex. B at Request to Admit No. 17; Interrogatory No. 12; Ex. E at Request to Admit No. 17; Ex. F.

[8] Ex. B at Request to Admit No. 14; Ex. E at Request to Admit No. 14; Ex D, ¶ 5.

[9] Ex. G.

## IV. SUMMARY OF THE ARGUMENT

The undisputed facts show that for over three years, Defendants took money from their employees under false pretenses. During this period, the Defendants used employees' pay, earmarked by them for deposit in their plan accounts, to pay Copy Cat's business creditors. Defendants' actions constituted clear-cut violations of ERISA and caused losses to the Plan and to the employees' plan accounts, which the Defendants are now obligated to restore.

## V. ARGUMENT

### A.   The Plan was an ERISA-Covered Employee Benefit Plan

ERISA § 3(3) defines a covered employee benefit plan to include "employee pension plans." An employee pension plan is defined as "any plan, fund, or program" which is "established or maintained by an employer or by an employee organization, or both, to the extent that . . . such plan, fund or program—provides retirement income . . . ." In the instant case, the Plan was established by Copy Cat to provide retirement income, and therefore, was an ERISA-covered employee benefit pension plan within the meaning of ERISA § 3(3).[10]

### B.   Defendants were Fiduciaries to the Plan

ERISA § 3(21)(A) provides, in relevant part, that a person is a fiduciary with respect to a plan to the extent

---

[10] Sec. III, A, 1.

(i) he exercises any discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

**1.     S. Blackford was a Fiduciary to the Plan**

The undisputed facts show that S. Blackford was the administrator of the Plan, and that, as administrator, exercised authority and control over the management of the Plan and over the Plan's assets, had the responsibility to make administrative decisions on the Plan's behalf, and had the authority to direct the payment of withheld employee contributions to the Plan.[11]  The position of administrator "by [its] very nature carr[ies] fiduciary status."  29 C.F.R. § 2509.758 at D-3.[12]  Thus, the undisputed facts show that S. Blackford (who by operation of Fed.R.Civ.P. 36(a)(3) has in fact admitted to being a fiduciary to the Plan)[13] was a fiduciary to the Plan.

**2.     J. Blackford was a Fiduciary to the Plan**

Congress intended the definition of "fiduciary" to be broadly construed.

---

[11] Sec. III, B, 1.

[12] *See also NLRB v. Amax Coal Co., Div. of Amax, Inc.*, 453 U.S. 322 (1981); *Donovan v. Mercer*, 747 F.2d 304, 309 (5th Cir. 1984) (citing DOL regulation); *Narda v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F. Supp. 685 (D. Md. 1990); *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 635 (W.D. Wis. 1979).

[13] Ex. E.

*LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  Thus, as the Supreme Court noted in *Mertens v. Hewitt Assocs.*, 113 S.Ct. 2063, 2071 (1993), consistent with ERISA's broad remedial purpose, ERISA "defines fiduciary not in terms of formal trusteeship, but in <u>functional</u> terms of control and authority over plans, thus expanding the universe of persons subject to fiduciary duties—and to damages— under 409(a)."  Conduct, not labels, determines fiduciary status.  *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir. 1992) (holding that ERISA "imposes fiduciary status upon those who act like fiduciaries as well as those who actually are fiduciaries.").  The undisputed record shows that that J. Blackford was a functional fiduciary because he exercised discretionary authority over Plan management and exercised control over plan assets.

The exercise of discretionary authority over plan management alone, regardless of whether that person has been formally granted such authority, makes the person who does so a fiduciary.  *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997).  Moreover, the Eighth Circuit has specifically held that a person "is a fiduciary within the meaning of ERISA, and thus subject to the fiduciary standard of care, because [he] appoints" the administrator of the Plan. *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988); *see also Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984).  J. Blackford was a functional fiduciary because he had the responsibility to make administrative decisions on the Plan's

behalf and exercised discretionary authority over plan management by appointing S. Blackford to administrate the Plan.[14]

J. Blackford was also a functional fiduciary because he exercised control over Plan assets.[15] Courts have held that all persons who exercise control over plan assets are fiduciaries. *See IT Corp.*, 107 F.3d at 1421 (holding that it was ERISA's purpose to "assure that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries."); *Bannistor v. Ullman*, 287 F.3d 394, 403 (11th Cir. 2002) (holding that a person is a fiduciary when they allowed plan assets to remain in the company's general account and then used the company's general account to pay creditors); *Connors v. Paybra Mining Co.*, 807 F. Supp. 1242, 1246 (S.D. W.Va. 1992) (same). Although Defendant J. Blackford had no formal fiduciary position, the undisputed facts show that he, like S. Blackford, exercised control over plan assets and, therefore, was a fiduciary to the Plan. Over a three year period, J. Blackford paid Copy Cat's business creditors from Copy Cat's general assets when they were commingled with employee

---

[14] Sec. III, B, 3.

[15] Department of Labor regulations define "plan assets" to include the monies withheld from employee wages for contribution to the Plan after the 15th business day following the month after the monies were deducted. 29 C.F.R. § 2510.3-102; s*ee, e.g., U.S. v. Whiting*, 471 F.3d 792, 799-800 (7th Cir. 2006).

withheld plan contributions.[16]

## C.    ERISA's Fiduciary Duties are "The Highest Known to Law"

Congress enacted ERISA to ensure the effective administration of employee

benefit plans and the payment of promised benefits.  *See* 29 U.S.C. § 1001(b)

(stating that Congress enacted ERISA "to protect . . . the interest of participants in

employee benefit plans and their beneficiaries"); *Shaw v. Delta Air Lines, Inc.*, 463

U.S. 85, 90 (1983) ("ERISA is a comprehensive statute designed to promote the

interests of employees and their beneficiaries in employment benefit plans.").

Congress' chief concern was the misuse and mismanagement of plan assets by plan

fiduciaries.  *Mass. Mut. Life Ins. Co. v. Russell*, 105 S. Ct. 3085, 3089 n.8 (1985).

Thus, in order to protect the participants of employee benefit plans, ERISA strictly

regulates the management of plan assets, and imposes duties on plan fiduciaries that

are "the highest known to the law."  *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8

(2d Cir. 1982).

## D.    Defendants violated the Fiduciary and Prohibited Transaction Provisions of ERISA

### 1.    By failing to ensure that employee withheld plan contributions were remitted to the Plan, Defendants violated ERISA § 403(c)(1)

ERISA § 403(c)(1) provides that the assets of the plan shall never "inure to

the benefit" of the employer and shall be held for the exclusive purpose of

---

[16] Sec. B, III, 4.

providing benefits to participants in the plan.  The undisputed record establishes that by failing to ensure that the employees' contributions to the Plan (which under 29 C.F.R. § 2510.3-102, became plan assets no later than "the 15th business day of the month following the month in which such amounts would otherwise have been payable"), Defendants caused those assets to be commingled with the general assets of Copy Cat.  The undisputed facts also show that once commingled, Defendants wrote checks on Copy Cat's checking account to pay Copy Cat's business creditors.[17]  As a matter of law, therefore, the Defendants allowed the Plan's assets to "inure to the benefit" of Copy Cat and failed to hold those assets for the exclusive purpose of providing benefits to participants in the plan in violation ERISA § 403(c)(1).  *Hawkeye Nat. Life Ins. Co. v. Avis Indus. Corp.*, 122 F.3d 490, 497-98 (8th Cir. 1997).

### 2.    By failing to ensure that employee withheld plan contributions were remitted to the Plan, Defendants violated ERISA § 404(a)(1)(A)

ERISA § 404(a)(1)(A) requires fiduciaries to discharge their duties with respect to ERISA-covered plans solely in the interests of participants.  The duty of loyalty imposed on fiduciaries by ERISA § 404(a)(1)(A) requires fiduciaries to act with "complete loyalty" to plan participants and beneficiaries with an "eye single" to their interests.  *Leigh*, 727 F.2d at 125.  It is clear that no benefits to the Plan

---

[17] Sec. III, B, 4.

were achieved by deducting, but not forwarding employee contributions to the Plan.

Therefore, it cannot be reasonably argued that Defendants' failure to forward

withheld employee contributions was done solely in the interests of the Plan's

participants. *See Leigh*, 727 F.2d at 125. Accordingly, as a matter of law, the

Defendants breached their fiduciary duties under section 404(a)(1)(A) by failing to

ensure that employees' withheld plan contributions were remitted to the Plan.

### 3. By failing to ensure that employee withheld plan contributions were remitted to the Plan, Defendants violated ERISA § 406(a)(1)(D)

ERISA § 406(a)(1)(D) prohibits a fiduciary from causing the plan to engage

in a transaction, if he knows or should know that such transaction constitutes a

"direct or indirect" transfer to, or use by or for the benefit of, a party in interest.[18]

As an employer of employees covered by the Plan, Copy Cat was a party in interest

to the Plan under ERISA § 3(14)(C). To establish that a fiduciary "knew or should

have known" of a prohibited transaction, it is not necessary to prove that the

fiduciary knew or should have known that the transaction was illegal. It need only

be established that the fiduciary knew or should have known that the transaction

involved a party in interest. *See Marshall v. Kelly*, 465 F. Supp. 341, 351 (W.D.

---

[18] Section 406(a)(1)(D), as well as §§ 406(b)(1) and (2) are three of several ERISA
provisions that were promulgated by Congress in order to facilitate Congress'
remedial interest in protecting employee benefit plans by creating easily applied
"blanket prohibitions." *Gilliam v. Edwards*, 492 F. Supp. 1255, 1263 (D.N.J.
1980); *see also Whitfield v. Tomasso*, 682 F. Supp. 1287, 1304 (E.D.N.Y. 1988).

Okla. 1978). Defendants, as the principle owners and the president and vice-

president of Copy Cat, [19] had the requisite knowledge of the failures to remit the

withheld employee plan contributions within the meaning of ERISA

§ 406(a)(1)(D). Defendant, as a matter of law, therefore also violated ERISA

§ 406(a)(D) by using the withheld and unremitted employee plan contributions to

pay off Copy Cat's business creditors. *See generally Donovan v. Williams*, 4

E.B.C. 1244, 1245 (N.D. Ohio 1983).

### 4. By failing to ensure that employee withheld plan contributions were remitted to the Plan, Defendants violated ERISA § 406(b)(1)

ERISA § 406(b)(1) prohibits a fiduciary from dealing with the assets of a

plan in his own interest or for his own account. *See, e.g., Lowen v. Tower Asset*

*Mgmt., Inc.,* 829 F.2d 1209, 1213-14 (2d Cir. 1987); *PBGC v. Hoyte*, 20 E.B.C.

2684, 2687 n.1 (S.D.N.Y. 1997). ERISA § 406(b)(1), however, does not require

proof of direct fiduciary financial gain. Thus, an ERISA § 406(b)(1) violation can

also be established by proof that the fiduciary caused a plan to engage in a

transaction from which "a person in which [the] fiduciary has an interest that may

affect his judgment" stands to profit from the transaction. *See* 29 C.F.R. §

2550.498 b-2 (e). The retention of withheld employee contributions in the general

assets of Copy Cat clearly resulted in a direct financial gain to Copy Cat and

---

[19] Sec.III, A, 1-3.

indirect financial gain to Defendants, as Copy Cat's co-owners. *See Srein v. Soft Drink Workers Union Local 812*, 93 F.3d 1088, 1098 (2d Cir. 1996); *Lowen*, 829 F.2d at 1213-14. Accordingly, by failing to remit employee contributions to the Plan and using those assets to pay creditors of Copy Cat, a company co-owned by them, Defendants, as a matter of law, violated ERISA § 406(b)(1).

### 5. By failing to ensure that employee withheld plan contributions were remitted to the Plan, Defendants violated ERISA § 406(b)(2)

ERISA § 406(b)(2) prohibits a fiduciary from acting in any transaction on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. The other party's adverse interest does not mean that the "interests [must] be antithetical, but only that they are different." *Sandoval v. Simmons,* 622 F. Supp 1174 (C.D. Ill. 1985); *see also Cutaiar v. Marshall*, 590 F.2d 523 (3d Cir. 1983); *Reich v. Compton* 57 F.3d 270 (3d Cir. 1995); *Donovan v. Mazzola*, 716 F.2d. 1226 (9th Cir. 1983). By allowing the Plan assets to be commingled with Copy Cat's general assets and then be used to pay Copy Cat's business creditors, Defendants acted on behalf of Copy Cat and themselves. Accordingly, as a matter of law, by failing to ensure that employee withheld plan contributions were remitted to the Plan, and not commingled in Copy Cat's general assets, Defendants also violated ERISA § 406(b)(2).

E.      **The Secretary is Entitled to the Relief Requested**

1.      **Injunctive Relief**

ERISA § 409(a) subjects all breaching fiduciaries to "such other equitable or remedial relief as the court may deem appropriate, including the removal of such fiduciary." "[S]uch other equitable relief" includes a permanent injunction against providing any services – whether as a fiduciary or otherwise – directly or indirectly to an ERISA covered plan. *Reich v. Lancaster*, 55 F.3d 1034, 1053-54 (5th Cir. 1995); *see also Martin v. Feilen*, 965 F.2d 660, 672-73 (8th Cir. 1992). Proof of likely future wrongdoing is not required. "Serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction." *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991); *see also Brock v. Robbins*, 830 F.2d 640 (7th Cir. 1987) (removing "honest but imprudent fiduciaries" who caused no plan loss).

Defendants' admitted failures to ensure that employees' contributions were forwarded to the Plan and expenditure of those monies for corporate purposes clearly constituted "serious misconduct." Defendants' conduct provides clear grounds for the issuance of a permanent injunction enjoining them from violating ERISA, removing them from any positions they may now hold with respect to the Plan, and enjoining them from serving as fiduciaries of, or as service providers to any ERISA-covered plan.

14

## 2.      Plan Loss Restoration and Disgorgement

ERISA § 409(a) makes all breaching fiduciaries "personally liable to make

good" to their plans all losses resulting from their breaches.  Defendants must

therefore make good to the Plan the losses resulting from their failure to ensure that

employee withheld plan contributions were remitted to the Plan.  When a fiduciary

"knowingly and deliberately fail[s] to perform that duty and used for his

corporation's purposes funds required to be allocated to pensioners[;] [h]e must

answer in damages for the consequences." *Pension Benefit Guar. Corp. v. Solmsen*,

671 F.Supp. 938, 945 (E.D.N.Y. 1987).

Moreover, as an ERISA plaintiff, the Secretary is presumptively entitled to

prejudgment interest on all restored amounts.  *Lorenzen v. Employees Ret. Plan*,

896 F.2d 228, 236- 37 (7th Cir. 1990); *Rivera v. Benefit Trust Life Ins. Co.*, 921

F.2d 692, 696 (7th Cir. 1991) ("This presumption in favor of prejudgment interest

awards is specifically applicable to ERISA cases.").[20]

---

[20] The Secretary's interest calculations, computed on the basis of the federal tax
overpayment rate set forth at 26 USC Section 6621 and compounded daily, see *Noe
v. Unum Life Insurance Company of America a/k/a First Unum Life Insurance
Company*, 1998 WL 80199, *3, (S.D.N.Y. 1998), are set forth in Ex. G.

## VI. <u>CONCLUSION</u>

Based on the foregoing, there is no genuine issue as to any material fact relied on by the Secretary, and the Secretary, as a matter of law, is entitled to summary judgment granting relief for violations of ERISA as set forth in the Secretary's Motion for Summary Judgment.

Respectfully submitted,

**M. PATRICIA SMITH**
Solicitor of Labor

**JOAN E. GESTRIN**
Regional Solicitor

 s/ Bruce C. Canetti
**BRUCE C. CANETTI**
Attorneys

P.O. ADDRESS:
Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St., Room 844
Chicago, Illinois 60604
Telephone: (312) 353-3271
Facsimile:  (312) 353-5698
canetti.bruce@dol.gov
IL Reg. #:  6285867

Attorneys for Hilda L. Solis,
Secretary of Labor, United States
Department of Labor,
Plaintiff

### <u>Certificate of Compliance with L.R. 7.1</u>

I, Bruce Canetti, certify that this memorandum of law complies with the length limitations of L.R. 7.1 and with the type size limitation of L.R. 7.1(f).  The total number of words, not including the caption, closing block, and Certificate is 3,344.  I have relied on the word court tool for Microsoft Word, and applied it to include all text, including headnotes, footnotes, and quotations.  I utilized Microsoft Word version 97-2003.